## J. I. CASE THRESHING MACHINE COMPANY *v.* SOUTH-WESTERN VENEER COMPANY.

### Opinion delivered October 14, 1918.

1. SALES—FAILURE TO READ CONTRACT—MISTAKE.—The rule that a party who signs a written instrument witnessing a contract must read it before he signs it or he cannot be heard to say that it does not evidence the contract is subject to the qualification that where a mistake is induced by the conduct of one of the parties, and the one who signs does so upon the belief that it contains certain omitted matter, this affords a good defense to a suit on the contract.

2. SALES—MEETING OF MINDS.—Where a contract of sale of machinery was supposed to be signed in duplicate, but the copy sent to the seller by its agent for approval was materially different from that delivered to the purchaser, and it appeared that the agent and the purchaser intended to execute the form of contract delivered to the purchaser, there was no meeting of minds, and no liability resulted.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—Where there was a conflict in the testimony, the chancellor's finding on an issue of fact will be sustained if not against the preponderance of the testimony.

Appeal from Woodruff Chancery Court; *E. D. Robertson*, Chancellor; affirmed.

*J. A. Comer*, for appellant.

1. No warranty was made by appellant. Mere puffing or commendation is not a warranty. 44 Ark. 216; 45 *Id.* 284.

2. Appellee had ample opportunity to read the written contract, and he is bound. 119 Ark. 553; 84 *Id.* 349.

3. All Robnolt's statements were made prior to the execution of the written contract and all testimony as to conversations should have been excluded, as all prior statements and representations were merged in the contract. 108 Ark. 503. It is plain, unambiguous and complete. 83 *Id.* 283.

4. A warranty resting in parol can not be engrafted upon a written instrument of sale of a chattel. 83 Ark. 240; 19 L. R. A. (N. S.) 1195.

5. There was no fraud. The burden to prove it was on appellee; also the burden to prove a breach of warranty. 99 Ark. 400.

6. No offer was made to return the machine, nor refund demanded. Rescission was not asked. The proof did not entitle appellee to a rescission. 4 Ark. 467; 5 *Id.* 395; 38 *Id.* 335; 94 *Id.* 200. There was no implied warranty as to quality or defects. 89 Ark. 108. The only warranty was as to title. There were no defects in the machine.

*Roy D. Campbell,* for appellee.

1. The contract was procured through fraud and misrepresentation.

2. The law implies that the machine was suitable for the purpose for which it was sold and that warranty failing appellee is not liable. Where a manufacturer offers his goods for sale and the vendee has no opportunity of inspection, the vendee necessarily relies upon the seller's knowledge and the law implies a warranty that the article is merchantable and reasonably fit for the purpose for which it was intended. 100 Ark. 21; 93 *Id.* 454; 79 *Id.* 470; 48 *Id.* 330; 72 *Id.* 343; 77 *Id.* 546; 81 *Id.* 549; 83 *Id.* 15; 90 *Id.* 78.

The converse of this proposition is also true. 80 Ark. 109.

3. The admissions and undisputed facts here entitle appellee to relief. 99 Ark. 490; 84 *Id.* 353; 123 *Id.* 492; 82 *Id.* 20-24; 112 *Id.* 498; 47 *Id.* 164.

4. While the contract expresses the final agreement of the parties, and parol testimony is not admissible to vary, qualify, contradict, add to or subtract from its terms, the rule does not apply where there is fraud. 87 Ark. 614; 100 *Id.* 28; 95 *Id.* 150; 101 *Id.* 95; 73 *Id.* 542; 99 *Id.* 438.

5. Taking charge of and operating the property does not waive a breach of warranty express or implied. 104 *Id.* 581; 53 *Id.* 155.

6. No offer to return was necessary as it would have been useless and vain.   90 Ark. 583; 95 *Id.* 488.

McCULLOCH, C. J.   This is an action instituted by appellant against appellee in the chancery court of Woodruff County to recover the sum of $1,250, with interest, being the aggregate amount of five promissory notes executed by appellee to appellant for the balance on the purchase price of a traction engine, and to enforce a lien on the property.

Appellant was engaged in manufacturing and selling new machinery of the kind sold to appellee, but this particular sale covered a second-hand machine.   Appellee was engaged in the business of manufacturing lumber in Woodruff County, and part of its business was to transport logs from the woods to the manufacturing plant and the machine in question was purchased by appellee to use for that purpose.

The sale was negotiated between Mr. Robnolt, one of appellant's salesmen, and Mr. Bush, the manager of appellee's business, and negotiations took place at appellee's place of business.   Appellant furnished its salesmen with two printed forms or order blanks, one printed on pink paper for use in taking orders for second-hand machinery, and the other printed on blue paper for use in taking orders for new machinery.   It was customary for salesmen to leave a carbon copy of an order with the purchaser, but on this particular occasion it appears that the agent only had one copy of the form used for second-hand machinery, and instead of making a carbon copy, he wrote the terms of the sale upon the other form of blank and made the following indorsement on that form, and signed it:

"This copy should be written on a second-hand order blank, but it is understood this blank takes its place."

This copy was left with Mr. Bush, appellee's manager, and the original order written on the second-hand machinery order blank was signed by appellee and sent in to appellant by Mr. Robnolt.   The terms of the con-

tract of sale were that appellee was to pay $400 cash on delivery of the machine and execute five equal notes for the balance of $1,250. The order blank which was sent in to the company contained no warranty concerning the article sold, but, on the contrary, contained the following clause:

"As a condition hereof it is fully understood and agreed that said machinery is purchased as second-hand and the company makes no warranties or guaranties of any kind either expressly or by implication except as to the ownership thereof at time and place of delivery. No representation made by any person as an inducement to give and execute this order shall bind the company."

The copy left with appellee contained a clause warranting the material, durability and capacity of the machine and contained a further provision that the machine should be tested within ten days and if found not up to warranty, appellant should have the right to replace it with other machinery or to refund the portion of the price paid and take the machinery back. The machine was shipped to appellee by appellant, and on its receipt appellee made the cash payment of $400, and executed the notes pursuant to the contract.

The preponderance of the testimony is to the effect that appellant's agent, in negotiating the sale with appellee, made representations to the latter that the second-hand machine which was the subject of the sale would do the work of a new machine, and that it would pull a load of three times its weight. After the machine was received by appellee it was tested and found that it would not do satisfactory work as represented. Appellee notified appellant of the result of the test, and thereupon a controversy arose as to what the contract was between the parties, and this litigation ensued.

Appellee in its answer and cross-complaint set up the fact that the machine was purchased under the belief that the copy of the contract left with its manager represented the terms of the sale, that appellant's agent had misrepresented the capacity of the machine, and that the

machine would not do the work either according to the representations of the salesman or the language of the written warranty, and the prayer of the cross-complaint was for the recovery of the sum of $400 paid. The finding of the chancellor was in appellee's favor.

The testimony is voluminous and embraces the depositions of Robnolt, appellant's salesman, and Bush, appellee's manager. Bush did not, in his testimony, claim that Robnolt, in express words misrepresented the contents of the written contract which he (Bush) signed and which was sent in to the company, but his testimony shows that he was led to believe by Robnolt's representations and conduct that the copy signed by him and sent in to appellant company expressed the same terms with reference to the warranty of quality and capacity as that contained in the copy of the contract which was left with Bush. Robnolt's indorsement on the printed form left with Bush is ambiguous. It states that the copy "should be written on a second-hand order blank," but it goes on further to state that "it is understood this blank takes its place." The first part of the indorsement would indicate that another form had been used stating different terms, but the concluding language is that the form of contract upon which the indorsement was made took the place of the other, and was to evidence the contract between the parties. The ambiguity is sufficient to let in proof which is, according to the preponderance, in favor of Bush's contention that he was misled by the conduct and representations of Robnolt, and that in good faith he accepted the copy of the contract from Robnolt believing it to contain the same terms as the one to be sent to the company.

The established rule is, of course, that the party who signs an instrument of writing which is intended to evidence his contract with another party must read it before he signs, otherwise he can not be heard to say afterwards that it does not constitute the contract. But this rule is subject to the qualification that where a mistake is induced by the conduct of one of the parties, and the

one who signs does so upon the belief that it contains certain omitted matter, this affords a good defense to a suit on the contract. *Stewart* v. *Fleming*, 96 Ark. 371.

The facts proved make out a case of failure of the minds of the parties to meet, for it appears from the testimony that appellee's manager intended to make one kind of a contract, whilst an entirely different one was sent to appellant for its approval, and that this state of facts was induced by the conduct of appellant's agent. Since the minds of the parties did not meet upon the same contract, no liability resulted. *Barton-Parker Mfg. Co.* v. *Taylor*, 78 Ark. 586.

There is a conflict in the testimony as to what took place between Robnolt and Bush, but the finding of the chancellor on that issue of fact is not against the preponderance of the testimony. The decree is, therefore, affirmed.