SOUTHERN COTTON OIL COMPANY *v.* FRAUENTHAL.

Opinion delivered October 18, 1920.

1. SALES—CONTRACT BY CORRESPONDENCE.—A binding contract of sale may be entered into by letters and telegrams, and an acceptance by letter or telegram of an unconditional offer, made in the same manner, will constitute an obligatory contract.

2. CONTRACTS—MUTUALITY.—Before a binding contract is consummated, each party must agree to the same proposition, and the agreement must be mutual to every essential term of the contract.

3. SALES—MUTUALITY.—Where a seller of cotton seed confirmed to the buyer by wire the sale of 100 tons of cotton seed for immediate shipment at $37 a ton, f. o. b. at place of shipment, but the buyer, in telegraphing its acceptance, stated it was sending written instructions, which authorized the seller to draw for only 90 per cent. of the value of the car, and called for prime cotton seed and guaranty of weights and delivery, there was no meeting of minds.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

### STATEMENT OF FACTS.

The Southern Cotton Oil Company brought this suit against Henry Frauenthal to recover $300 damages for his refusal to deliver to it 100 tons of cotton seed which it had purchased from him.

F. M. Hunt was the agent of the Southern Cotton Oil Company. According to his testimony, he had had a conversation with Henry Frauenthal and had purchased from him 100 tons of cotton seed at $37 per ton. The parties discussed the question of weights. Frauenthal claimed that he should be allowed to draw for the full amount. Hunt replied, "No, but when the cars come into Little Rock and they contain full weights, you can have some more." Hunt also asked Frauenthal to confirm the sale by a telegram. Henry Frauenthal then signed and sent from Conway, Ark., to the Southern Cotton Oil Company at Little Rock, Ark., the following telegram: "I confirm sale of one hundred tons cotton seed immediate shipment at thirty-seven f. o. b."

The Southern Cotton Oil Company at once signed and sent from its place of business at Little Rock to Henry Frauenthal at Conway, Arkansas, the following telegram: "Telegram received, mailing regular confirmation today price stated, thirty-seven dollars. Also furnishing written instructions in regard to shipment."

It also sent on the same day a letter of instructions as follows:

"Little Rock, Ark., Oct. 13, 1915.

"Mr. Henry Frauenthal, Conway, Ark.:

"Dear Sir: We acknowledge receipt of your telegram of this morning reading as follows: 'I confirm sale of one hundred tons cotton seed immediate shipment at thirty-seven dollars per ton f. o. b. cars Conway.' In reply to which we sent you the following answer: 'Telegram received mailing regular confirmation today—price stated thirty-seven dollars per ton, also furnishing written instructions in regard to shipment.

"We wish you would please make shipment of this purchase to the Southern Cotton Oil Company, Little Rock, Arkansas, on open bill of lading (to avoid delay in railroad yards) it will be satisfactory for you to draw for 90 per cent. of the value of each car with bill of lading

and invoice attached to your drafts with the understanding you will guarantee shipping weight.

"We thank you for the shipment, and just as soon as the hundred tons have been received in Little Rock we will try to have a representative of our company see you in regard to the matter you mentioned by telephone. We would prefer to get this transaction closed before discussing anything else.

"Yours very truly."

Frauenthal immediately wrote them that he could not sign the confirmation of purchase sent him for the reason that it contained a contract essentially different from the one he had offered to enter into with appellant. He stated that the contract agreed upon was, that he should draw on the purchaser with bill of lading attached for the full amount of the invoices, and that he should only guarantee the weights to be within one-half of one per cent. of the weights shown by the invoices. Frauenthal also testified to these facts at the trial of the case.

Testimony was introduced by the plaintiff tending to show that it suffered damages in the sum of $300 by the failure of Frauenthal to comply with his contract in the sale of the cotton seed.

The case was tried before the court sitting as a jury, and from the judgment rendered in favor of the defendant the plaintiff has prosecuted this appeal.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The first telegram was a substantial compliance with our statute of frauds. 137 Ark. 414. The two telegrams constitute a binding contract of sale. There was an offer and unconditional acceptance. The minds of the parties met on all essentials as to the sale. 95 Ark. 421. The custom and usage of trade generally govern and not the place of delivery. 102 Ark. 400; 113 *Id.* 325. Oral testimony was admissible to explain the term "cotton seed" in the customs and usages of trade. *Ib., supra.* The testimony shows that the seed were "prime seed,"

of good merchantable quality.  The court erred in refusing appellant's request for finding of facts and declarations of law.

*Sam Frauenthal* and *R. W. Robins,* for appellee.

The two telegrams did not constitute a binding contract; they do not show a meeting of minds of the parties.  There was an offer by appellee, but appellant did not accept, but simply acknowledged receipt of the offer and stated that a "confirmation" with instructions was being sent by mail and the confirmation and instructions contained an entirely different contract.  The custom and usage of trade at the place of delivery controls the definition of terms of a contract of this kind.  121 Ark. 150.  The offer and accpetance are not the same, and the minds of the parties did not meet.  126 Ark. 19; 85 Pac. 551; 6 L. R. A. (N. S.) 928.  See, also, 76 Ark. 237.  There never was agreement as to a most essential part of a sale.  78 Ark. 586; 135 *Id.* 607; 97 *Id.* 613; 1 Parsons on Cont., 477; 123 Minn. 409; L. R. A., 1915 D, 150; 153 S. W. 431.  An offer to accept or acceptance on terms varying from those offered is a rejection of the offer.  119 U. S. 149.

HART, J. (after stating the facts).  Counsel for the plaintiff seeks to reverse the judgment on the ground that the two telegrams constituted a binding contract of sale of the cotton seed, and that Frauenthal refused to carry out the contract on his part to the damage of the plaintiff in the sum of $300.

It is true, as contended by counsel for the plaintiff, that a binding contract of sale may be entered into by letters and telegrams, and that an acceptance by letter or telegram of an unconditional offer made in the same manner will constitute an obligatory contract.  *Allen* v. *Nothern,* 121 Ark. 150, and cases cited, and *J. I. Case Threshing Machine Co.* v. *Southwestern Veneer Co.,* 135 Ark. 607.  It is equally well settled that before the contract is consummated each party must agree to the same proposition, and the agreement must be mutual to every

essential term of the contract. The telegram signed by Frauenthal is as follows: ''I confirm sale of 100 tons cotton seed immediate shipment at 37 f. o. b., Conway.''

The plaintiff immediately telegraphed its acceptance in which it stated that it was sending written instructions in regard to the shipment. In the written instructions Frauenthal was only authorized to draw for 90 per cent. of the value of the car with bill of lading attached to his draft.

On the same day the company also wrote to Frauenthal the following letter

''Dear Sir: We beg to confirm telephone conversation with you today which resulted in our buying from you ............... cars (approximately 100 tons) of PRIME COTTON SEED at $37 per ton, loaded on board cars at Conway. Shipment prompt weights and quality guaranteed at destination.

''If this is not your understanding of the terms of the trade, notify us by return mail, otherwise trade will be binding as written above.

''Please sign and return to us promptly one copy of this confirmation.''

This letter requires that the weights and quality of the cotton seed should be guaranteed at destination. The shipping instructions sent on the same day only authorized Frauenthal to draw 90 per cent. of the invoice price at the time the seed were loaded into the cars at Conway. The telegram of the oil company refers to this letter and the shipping instructions as a part of its acceptance of the offer made by Frauenthal in his telegram. Hence they constituted a part of the negotiations, and it can not be said that Frauenthal's telegram and the oil company's telegram in answer thereto constituted a binding contract between the parties. The Oil Company recognized that the contract was not complete by adding these new terms and then writing to Frauenthal that if this was not his understanding of the terms of the trade to notify it by return mail. It is manifest that the limita-

tion of the right of Frauenthal to draw for only 90 per cent. of the invoice price of the cotton seed, and requiring him to guarantee the weights and quality at destination were new terms essentially different from those contained in Frauenthal's telegram. The telegram of the company refers to a confirmatory letter and also to one containing shipping instructions.

As above stated, the new terms as indicated in these letters prevented the telegram of the Oil Company from being an unconditional acceptance of Frauenthal's telegram. Frauenthal immediately rejected the proposal contained in these letters as soon as he received them. Hence there was no meeting of the minds of the parties on the same terms, and therefore no binding contract.

It follows that the court was warranted in finding for the defendant, and the judgment will be affirmed.