BLODGETT CONSTRUCTION COMPANY *v.* WATKINS LUMBER
COMPANY.

Opinion delivered April 2, 1923.

1. SALES—SUFFICIENCY OF EVIDENCE TO SUBMIT TO JURY.—In an
action for breach of a contract of sale, evidence *held* insufficient
to warrant submission to the jury of the question whether
there was a binding contract of sale.

2. FRAUDS, STATUTE OF—CONTRACT PARTLY ORAL.—A contract for
the sale of lumber within the statute cannot rest partly in parol
and partly in writing, and where plaintiffs submitted a written
price list of lumber which was accepted by defendant in writing,
but neither writing specified the quantity of lumber to be
furnished, a valid contract of sale could not be established by
proof of oral representations of defendant's agent that certain
quantities would be required.

3. CONTRACTS—MUTUALITY.—A contract for the sale of lumber at
certain prices, without specifying the quantity, is unenforceable
as lacking in mutuality.

Appeal from Polk Circuit Court; *James S. Steel,*
Judge; reversed.

*Norwood & Alley,* for appellant.

The court erred in refusing to instruct a verdict for
appellant. If there was a contract of sale it was within
the statute of frauds, not being in writing. Sec. 4864,
Crawford & Moses' Digest. *Hamilton* v. *Fawlkes,* 16
Ark. 340; *St. L. I. M. & S. Ry.* v. *Bendler,* 45 Ark. 17;
*Ft. Smith* v. *Brazon,* 49 Ark. 306. Neither was there any
mutuality of obligation in the alleged contract. 1 Parsons
on Contracts, 486. Hammon on Contracts, 682. Court
erred in refusing to allow appellant to show appellee
failed to minimize his damage. *McGehee* v. *Yunker &
Ronk,* 137 Ark. 397. Also in giving appellee's requested
instructions 1 and 2, there being no evidence on which
to base them. *L. R. & F. S. Ry.* v. *Trotter,* 37 Ark. 593;
*Frank* v. *Dungan,* 76 Ark. 599; *Huddleston* v. *St. L. I. M.
& S. Ry. Co.,* 88 Ark. 445; *Short* v. *Johnson,* 89 Ark. 279;
*Johnson* v. *Pennington,* 105 Ark. 278; *Emmerson* v.
*Turner,* 95 Ark. 597; *Sadler* v. *Sadler,* 16 Ark. 628;
*Burke* v. *Snell,* 42 Ark. 57. The question of whether the

alleged contract was within the statute of frauds should have been submitted under appellant's refused request for instructions 3, 4 and 6. *Grady* v. *Dierks Lumber Co.*, 149 Ark. 306; *Arkadelphia Milling Company* v. *Green*, 142 Ark. 565; *Tyson* v. *Horsley*, 141 Ark. 545; *Neal* v. *Brandon*, 70 Ark. 79; *Summers* v. *Wood*, 131 Ark. 345; *Pekin Cooperage Co.* v. *Wilson*, 148 Ark. 654. Judgment should be reversed and cause dismissed. *St. L. I. M. & S. Ry. Co.* v. *Humbert*, 101 Ark. 532; *Arkansas Cotton Oil Co.* v. *Carr*, 89 Ark. 50; *Marshall Bank* v. *Turney*, 105 Ark. 116.

*McPhetridge & Martin*, for appellee.

The acceptance of the quotations as offered by appellee consummated a contract. 96 Ark. 184; 90 Ark. 504; 100 Ark. 51; 1 Elliott on Contracts, 25. Offer and acceptance were in writing, and constituted a contract not within the statute of frauds. 1 Elliott on Contracts, sec. 44; § 4886, Crawford & Moses' Digest. No error in refusing appellant's requested instructions. Construction of a contract is for the court, not the jury. 75 Ark. 162; 52 Ark. 55; 95 Ark. 272; 20 Ark. 583; 67 Ark. 553; 101 Ark. 353; 78 Ark. 574; *Mann* v. *Urquhart*, 89 Ark. 230.

WOOD, J. This action was instituted by the Watkins Lumber Company, a partnership (hereafter called appellee), against A. M. Blodgett, doing business as Blodgett Construction Company (hereafter called appellant). The appellee alleged in its complaint that it entered into an oral contract with the appellant by which it was to furnish appellant not less than fifty and probably sixty thousand feet of pine lumber. Among other things appellee alleged that, at the request of appellant, it, on the 22nd day of March, 1920, submitted in writing to appellant a price list or offer to furnish the timber and lumber as follows: "We agree to furnish 3x6 and wider post and whiteoak bridge plank at mill in Mena, Arkansas, at $60 per M, B.M., and mixed oak at $55, less all No. Grade, 1x6 No. 1 $60; No. 2 $55; 2x4 No. 1 $55; No. 2 $50. This offer good for ten days only."

That the appellant delivered to the appellee his acceptance of the above offer. in writing, which is as follows: "Referring to your quotation of March 22, of $60 for 1,000 B.M. post whiteoak bridge plank, $55 for 1,000 B.M. for mixed bridge plank, all 3x6 and wider, 16 feet long. $60 for 1,000 ft. B.M. No. 1 1x6; $55 for 1,000 ft. B.M. No. 2 1x6; $50 for 1,000 ft. B.M. No. 2 2x4. We hereby accept the above quotations, and will specify the sizes and quantities required at an early date."

That appellant agreed to purchase the timber according to the offer and acceptance thereof. Appellee further alleged that, on the 4th of October, 1920, the appellant received of the appellee a small portion of lumber so purchased under the contract, amounting to the sum of $47.40, and paid the appellee therefor, in accordance with the agreement, but it thereafter refused to accept any more lumber, notwithstanding the appellee at all times was able, ready and willing to carry out the agreement on its part, and urged that the appellant do so; that the appellant, in refusing to receive and pay for the lumber in violation of his contract, had damaged the appellee in the sum of $4,000, for which it prayed judgment.

The appellant, in his answer, denied all the material allegations of the complaint, and alleged that the contract, if made at all, was an oral agreement, and the same being for more than $30, and being for the sale of goods, wares and merchandise, was void because there was no note or memorandum signed by the appellant; that no part of the goods had been accepted under the alleged contract, and that no payment had been made to bind the bargain. He therefore pleaded the statute of frauds as a defense to appellee's action.

W. E. Watkins, witness for the appellee, testified that one Yingling, who represented the appellant, called at the office of the appellee in the early part of 1920 and stated that the appellant had the contract for the building of bridges and culverts on the Jefferson Highway, and

asked witness what he would furnish the stuff for. Yingling told witness about what the stuff would be. Witness replied that it would take a little time to get up the prices, and he submitted to the appellant the proposition in writing. (Here the writing of March 22, 1920, *supra,* from the appellee to the appellant, was indentified and introduced in evidence). Witness stated that he received a reply to the proposition made, and he identified the writing of March 29, *supra,* and introduced the same in evidence. Witness further testified that in their negotiation Yingling said that he couldn't state exactly the quantity of material that would be required for the work, but that it would not be less than fifty and perhaps not more than sixty thousand feet of pine lumber and sixty thousand feet of oak lumber; that the quotations contained in the writing embraced both pine and oak. The appellant thereafter ordered and the appellee furnished a small amount of lumber, the bill for which was identified by the witness and introduced in evidence, as follows:

"Mena, Ark., 10-4-1920.

"M. Blodgett Con. Co., in account with Watkins Lumber Company.

| 10 | 2x6 16 No. 1 | $ 9.60 |
|----|--------------|--------|
| 59 | 1x6 16 No. 1 | 28.32 |
| 6 | 1x6 10 No. 1 | 1.80 |
| 9 | 1x6 14 No. 1 | 3.87 |
| 1 | 1x6 10 No. 1 | .30 |
| 2 | 1x6 12 No. 1 | .72 |
| 12 | 1x4 12 No | 2.88 |

$47.40

"Paid 11-4-1920."

Witness stated that the lumber evidenced by the above bill was furnished by the appellee to the appellant and accepted and paid for under the contract. The above

was the only order appellee received and filled under the contract. The appellant proposed to construct the bridges and culverts of the Jefferson Highway, a distance of forty-nine miles. The witness then testified as to the damage that appellee sustained by reason of the failure of appellant to comply with the alleged contract, which testimony, in view of the conclusion we have reached as to the contract, it becomes unnecessary to set forth.

On cross-examination the witness stated that the only writings they had entered into were the writings introduced in evidence in which appellee quoted appellant prices on certain lumber and bridge material. Appellant accepted those quotations, and witness thought he made it a completed contract. After that, in October some of the same kind of material that was specified in the quotations was ordered and furnished, but all of it was not that kind of stuff. It was not a written order, but the foreman of appellant came and got the stuff, and appellee afterwards paid for it and made out a statement of the amount furnished. Witness was asked this question: "You didn't enter into a definite agreement as to just how much lumber would be used?" and answered, "No, except the fifty to sixty thousand feet. He made that statement himself. If he had said fifty thousand feet, that would have been an estimate, but he said fifty to sixty thousand feet. He said they would need from fifty to sixty thousand feet of each kind."

Witness further testified that he quoted appellant exactly the sizes it asked for. Witness wrote them down at the time. He could not quote the prices at the time because he didn't know just exactly what they would be. The witness was further asked why he didn't suggest the quantity from fifty to sixty thousand feet in his communication to appellant, and answered: "I didn't think there was any reason for it. I had implicit confidence in Yingling and Blodgett Construction Company, and I

had no idea but what they would carry out their con-tract with me. I don't know that I would have asked a written contract if they hadn't done that." This writing here is the only written contract witness had. The figures made in the writing were based partially on the amount of lumber that Yingling had given witness that would be required to do their work on the highway. Witness would not have sold appellant a retail bill at that price.

Yingling testified, as a witness for the appellant, substantially as follows: He was in charge of the work for the appellant, and had a controversy with Watkins in the early part of March, 1920. At that time the appellant was bidding for the construction of the bridges on the Jefferson Highway, and asked Watkins for a quotation on lumber, and told him appellant was bidding on the bridges, and either had, or expected to have, a contract for the bridge work. Appellant would need a considerable amount of lumber, both oak and pine. He described the lumber to Watkins, and asked him for a quotation on same. Watkins asked witness how much appellant would use on the highway, and witness replied appellant would use between fifty and sixty thousand feet altogether, and witness wanted a quotation on all, or a part of that lumber, and that was the quotation that appellee made appellant. Appellant did not agree to buy all the lumber from appellee. Witness told Watkins that it would not pay to make a contract of that kind; that part of the lumber would be used in the south end of the county, and it would be absolutely foolish for the lumber to be delivered in Mena when appellant was going to use it thirty miles south of Mena. There were mills all up and down the road. Appellee afterwards sent appellant the prices quoted in the writing, and appellant accepted the same as set forth. Appellant never at any time agreed to purchase from the appellee all the oak and pine lumber that was necessary for the con-

struction work on the highway.  The little bill of lumber that appellant bought of appellee was paid for.

The witness further testified that he went to Watkins to get a price on the lumber in order to have an idea of what the lumber was worth.  Witness had other quotations practically the same as those received from the appellee.  He obtained the quotations in order to enable the appellant to bid intelligently on the construction work on the road, and appellant's bid was predicated on the prices for lumber and lumber received.  Appellant bought lumber from other mills along the road.  Witness made arrangements with local mills on the road to deliver bridge material.  It bought the pine lumber for forms as it needed it.

In rebuttal, Watkins testified that Yingling did not request him to make quotations on the whole or any part of the lumber that might be needed in the construction work.  He was asked, on cross-examination, how long it was after the conversation in March before the construction work began, and stated that it must have been some time in August or September.

The court, at the request of the appellee, gave the following instruction: "No. 1.  If the jury believe from a preponderance of the evidence that it was agreed between the plaintiff and the defendant that the prices to be quoted by the plaintiff on lumber to be used on the construction work, and not on all the lumber, should apply on all or part thereof, as contended by the defendant, you will find for the plaintiff."  And, at the request of the appellant, the court instructed the jury as follows: "No. 5.  You are instructed that, before you can find for the plaintiff, you will have to find from a preponderance of the evidence that the defendant agreed to purchase from the plaintiff not less than 50,000 feet of oak and 50,000 feet of pine lumber, at an agreed price.  If you believe that the defendant only requested and accepted quotations on the price of lumber, without any

agreement to order any agreed amount of lumber from plaintiff, your verdict would be for the defendant.''

The appellant asked the court to direct the jury to return a verdict in its favor, and also to instruct the jury, in effect, that the action by the appellee was upon an oral contract for the sale of lumber, and, as the alleged. price of the lumber was more than $30, the appellee could not recover unless it had proved by preponderance of the evidence that there was some note, memorandum, or other writing signed by the parties, which showed that the appellant agreed to purchase of the appellee the lumber upon the terms alleged in the complaint; or, that the lumber delivered to the appellant and paid for by it was intended as coming under the contract.'' The court refused these prayers for instructions, to which the appellant duly excepted. The trial resulted in a verdict and judgment in favor of the appellee in the sum of $2,000. From that judgment is this appeal.

This action is based on an alleged oral contract. The court erred in its instructions to the jury. There was no evidence to warrant the court in sending to the jury the issue as to whether or not there was a binding contract between the appellant and the appellee for the sale and purchase of lumber. We do not discover any testimony in the record tending to prove that the appellant agreed to purchase not less than 100,000 feet of lumber from the appellee, nor is there any testimony that tended to prove that the appellee agreed to sell that quantity of timber to the appellant.

Giving the testimony its strongest probative force in favor of the appellee, it only tends to prove that Yingling, who conducted the negotiations for the appellant, said that he could not state exactly the quantity that would be required, but that it would be not less than fifty and perhaps sixty thousand feet. He asked Watkins what he would furnish the stuff for, and told Watkins what it would be. This testimony only tends to

prove that Yingling represented that it would take not less than 100,000 feet to do the work on the Jefferson Highway. It does not prove, or tend to prove, that he agreed with Watkins to buy at least that quantity of lumber. The undisputed testimony shows that at that time the prices had not been fixed. Therefore, certainly at that time there was no agreement upon the part of the appellant to take at least 100,000 feet of timber at an agreed price. Nor is there any testimony tending to prove that appellee at that time agreed to furnish the appellant at least 100,000 feet of timber. But it is argued by learned counsel for the appellee that the contract, although not complete at that time, was afterwards completed by the written offer on the part of the appellee to furnish the lumber at the prices therein designated and the written acceptance of such offer by the appellant. We do not discover in the offer or in the acceptance thereof an obligation upon the part of the appellee to furnish, nor upon the part of the appellant to accept, any specified quantity of lumber. True, the prices are specified in the offer and acceptance, but no quantity is mentioned. On the contrary, the acceptance expressly states: "We hereby accept the above quotations, and will specify the sizes and quantities required at an early date."

Now, a contract cannot rest partly in parol and partly in writing. *Graves* v. *Bodcaw Lumber Co.,* 129 Ark. 354; *Izard* v. *Conn. Fire Ins. Co.,* 128 Ark. 433. There is no testimony in this record to prove either an oral or written contract for the sale and purchase of the quantity of lumber as alleged in the complaint. There being no proof of either a completed oral or written contract, there is no obligation on the part of the appellee to sell nor on the part of the appellant to buy the timber, as alleged in the complaint. Therefore the alleged contract is no contract at all, and cannot be enforced because it lacks mutuality of obligation. *Blanton* v. *Forrest City Mfg. Co.,* 138 Ark. 508; *Sou. Cotton Seed Oil*

*Co.* v. *Frauenthal*, 145 Ark. 394. We therefore conclude that the court erred in not giving appellant's prayer for a directed verdict.

This conclusion makes it unnecessary to discuss the issue of the statute of frauds.

The judgment is reversed, and the cause is dismissed.