MALCO THEATRES, INC., *v.* BOSWELL.

4-8068                                           199 S. W. 2d 606

Opinion delivered February 17, 1947.

*Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

*Hays, Wait & Williams,* for appellee.

McHaney, Justice. Appellee is the owner of a building in Russellville, Arkansas, which has been under written lease to appellant to operate a picture show therein from January 1, 1941, to December 31, 1945, at a monthly rental of $90 for the first two years and $100 for the last three years. In addition to the usual terms and conditions, the lease provided for certain passes to appellee and her family as follows: "As a further consideration of rent herein specified, the party of the second part agrees to furnish four (4) annual passes to any and all picture shows operated by them in the City of Russellville, Arkansas, said passes issued to the party of the first part and members of her family, as follows: One pass to Mrs. Mattie Boswell; one pass to Vestal Boswell; one pass to Mr. and Mrs. Cletis Boswell (and small son), during the term of this lease."

On September 11, 1945, appellant wrote appellee a letter, calling her attention to the expiration date of the lease, December 31, 1945, and expressing a desire to extend the lease for another five years. A lease extension agreement executed by appellant was enclosed for this purpose, which provided that the terms and conditions set out in the original lease should bind the parties for an additional five years. On September 16, 1945, appellee wrote appellant she would "have to have an increase of $25 per month," over the $100 per month she was then getting. On September 26, 1945, appellant wrote appellee, in part, as follows: "We have been your tenants quite a while in Russellville, Mrs. Boswell, and I am sure

that we have been satisfactory. If you insist upon the $25 per month increase in rental, we have no alternative but to accept same; however, I do believe that in fairness on the extension of the lease, this should be increased for the first two years at $112.50 per month, and for the remaining three years at $125 per month. The rental on this building has increased from $50 per month from the time that it was rented to Mr. McGinnis to $100 per month that we are paying now.

"I am leaving this matter up to your own decision as I know that you will be fair about same."

At this point appellee seems to have consulted her attorney, Mr. Hays, for, on October 9, 1945, her attorney answered appellant's letter next above quoted, stating that the said letter and the proposed extension of lease agreement had been referred to him. In this letter appellant was advised that the rent would have to be $125 per month; that a new lease agreement would be required and that an exact duplicate of the then lease would be satisfactory, except the monthly payments would be $125 and except as to passes. In this connection Mr. Hays wrote appellant the following: "It seems that the original passes issued by your corporation provided for admission to all shows as set out in the paragraph on 'Passes' on page three, however, later these passes excepted passes for Sunday, Saturday, or Holiday shows. Cletis Boswell objected very strongly to this change in passes and now insists there shall be a clear understanding that the passes during the term would admit to all shows, subject of course to excise tax. It seems that the local manager and Mr. Boswell had some sharp words about it and Mrs. Boswell insisted this matter be clearly expressed. The four passes mentioned for Cletis Boswell shall be for himself 'and family.' He has one boy who would have to pay child's admission and another boy who would become chargeable during the term of a five-year lease. You understand, as I do, that it is the little things that make the most difficulty in closing such matters.

"Under Mrs. Boswell's direction we ask that you prepare a new lease contract embracing changes as to the monthly rental and passes, and mail same to us for approval."

Replying to this letter on October 17, 1945, appellant sent Mr. Hays a new lease agreement embodying the same terms as the old lease except the monthly rentals were to be $125, and except the clause as to passes which limited them to one pass for appellee, one for Vestal Boswell, and one each for Mr. and Mrs. Cletis Boswell. In its letter of said date appellant refused to change the condition of the passes, refused to remove the restriction against their use on Saturdays, Sundays and holidays. In reply to this letter Mr. Hays wrote appellant on October 31, 1945, asking that the lease, as to passes, be changed to read, "one pass each to Mr. and Mrs. Cletis Boswell and family," which added the words "and family" to the lease as written, and returned same to appellant. In reply to this letter appellant wrote Mr. Hays on November 1, 1945, declining to make the change in the lease agreement suggested, and, in part, said: "In as much as we have complied with Mrs. Boswell's letter of September 16 in an increase of $25 per month rental, we have taken the position that our lease is extended for that period of time. If Mrs. Boswell wishes to execute the leases on this basis, we will be glad to send them to you for her signature."

Appellee wrote appellant on January 2, 1946, that its lease had expired and its further occupancy of said building "is permissive only, from month to month." The check of appellant of January 9, for $125, was returned to it by appellee on January 10, as also the passes sent to her. On January 8, she wrote appellant notifying it that she would require the surrender of said building at the expiration of 30 days, and to have same vacated on or before February 10.

On February 12, appellee caused a notice to be served on appellant to quit and deliver up the possession of her building on or before February 15.

On February 16, appellee brought this action against appellant in unlawful detainer, gave bond in the sum of $5,000 and secured a writ of possession. Appellant gave a cross-bond and retained possession. Trial before the court sitting as a jury resulted in a judgment for appellee against appellant for the possession of said building and for the use and occupation thereof the sum of $887.50 on the basis of $125 per month from January 1 to August 3, 1946, with interest thereafter until paid at 6 per cent. and costs.

From this judgment there is here a direct appeal by appellant from the judgment for possession of the building and a cross-appeal by appellee from so much of the judgment as limited her recovery for damages to $125 per month for the use and occupancy of said building since January 1, 1946.

For a reversal of the judgment for possession, appellant contends that its letter to appellee of September 26, 1946, in answer to her letter of September 16, and particularly the sentence therein which said: "If you insist upon the $25 per month increase in rental, we have no alternative but to accept same," constitutes a "complete acceptance of Mrs. Boswell's proposition to rent to appellant the property for another five year period." Assuming without deciding that this is true, we cannot agree that a completed contract was made, because the amount of the monthly rental was not the only consideration moving to appellee to be agreed upon. The clause regarding passes was a part of the consideration for the lease as shown by the clause above quoted from the original lease agreement, and about which the parties never did agree. This is clearly demonstrated by the letter of appellee's attorney to appellant of October 9, 1945, and its reply thereto of October 17, and is further emphasized by their respective letters dated October 31 and November 1.

It thus appears that there was no meeting of the minds of the parties at least to one of the essential terms of the contract, the passes, and, therefore, there was no

binding contract. In *Southern Cotton Oil Co.* v. *Frauenthal,* 145 Ark. 394, 224 S. W. 730, we said: "It is true, as contended by counsel for the plaintiff, that a binding contract of sale may be entered into by letters and telegrams, and that an acceptance by letter or telegram of an unconditional offer made in the same manner will constitute an obligatory contract. *Allen* v. *Nothern,* 121 Ark. 150, 180 S. W. 465, and cases cited, and *J. I. Case Threshing Machine Co.* v. *Southwestern Veneer Co.,* 135 Ark. 607, 205 S. W. 978. It is equally well settled that before the contract is consummated each party must agree to the same proposition, and the agreement must be mutual to every essential term of the contract."

In the recent case of *Gatling* v. *Goodgame,* 209 Ark. 867, 192 S. W. 2d 878, we said: "It is well settled that in order to make a contract, there must be a meeting of the minds as to all terms." Citing a number of cases. But learned counsel for appellant contends that the matter of passes was a courtesy extended by appellant to appellee, and was an after thought brought up to find a loophole to evade carrying out the terms of the contract. The question of passes, we think, was not merely a courtesy by appellant to appellee, but was in compliance with an express provision of the original contract, and was a requirement demanded by appellee for a new contract and refused in the form demanded by appellant. We cannot say this consideration was *de minimis.*

As to the cross-appeal of appellee but little need be said. She contends that the rental value of the building is $200 per month and offered in evidence a check from another party dated December 15, 1945, for $1,800 for rent for 1946, if he could get possession of the building. But the fact remains that appellee offered to rent the building to appellant for $125 per month for five years. The court found this amount to be the correct measure of damages for holding over, and we think there was substantial evidence to support the finding.

The judgment will be affirmed both on the direct and cross-appeals.

GRIFFIN SMITH, C. J., dissents.