RICHARDSON *v.* STUBERFIELD.

Opinion delivered April 27, 1925.

1. VENDOR AND PURCHASER—CONTRACT NOT COMPLETED WHEN.— Where defendant's offer by letter to purchase plaintiff's land stated that if defendant's terms were acceptable to plaintiff he would close the deal on a certain date, and if he did not hear from plaintiff before that time he would consider the offer refused, but defendant by letter withdrew the offer and refused thereafter to purchase the land, there was no completed contract.

2. FRAUDS, STATUTE OF—SALE OF LAND—MEMORANDUM.—A letter offering to purchase land for a certain price is not of itself a sufficient memorandum to satisfy the statute of frauds where it in no way described or gave any means of identifying the land.

3. VENDOR AND PURCHASER — SALE — DESCRIPTION.—Every contract for the purchase of land must define its identity and fix its

locality, or there must be such a description as by aid of parol evidence will readily point to its locality and boundaries.

4.  FRAUDS, STATUTE OF—SALE OF LAND—CERTAINTY.—An agreement for the sale of land, which is required to be in writing by the statute of frauds, must be certain in itself or capable of being made certain by reference to something else.

5.  SPECIFIC PERFORMANCE—INSUFFICIENCY OF DESCRIPTION OF LAND. —Specific performance of a contract for the sale of land will not be decreed where it in no way described or identified the land.

Appeal from Cleveland Chancery Court; *John M. Elliott*, Chancellor; reversed.

### STATEMENT OF FACTS.

James W. Stuberfield and others brought this suit in equity against Charles Richardson for the specific performance of the sale of a tract of land in Cleveland County, Arkansas. The defendant denied that he had made a contract with the plaintiffs to purchase the land, and also pleaded the statute of frauds.

It appears from the record that J. W. Stuberfield and Rufus Stuberfield had purchased from C. K. Elliott and C. K. Elliott, Jr., 1,636 acres of land lying in the Saline River bottoms in Cleveland County, Arkansas. Charles Richardson came down from Camden, Arkansas, to look at the land with the view of purchasing it. He was shown over the cultivated land, and the high-water marks were pointed out to him. Upon his return home, Charles Richardson wrote to J. W. Stuberfield of the date of October 28, 1922, a letter the body of which is as follows:

"Dear sir: After thinking over the condition of the houses on your holdings, which are in very bad condition, and realizing that the expenditure I will very necessarily have to make in repairing said improvements, I have decided that I am willing to close out with you for the said 1,636 acres, together with all movable property, for the sum of ($60,000) sixty thousand. Now if this is acceptable to you, write me by return mail, and I will be up there next Thursday, November 2, to close out with you as heretofore agreed to.

"If I do not hear from you by letter or in person before this date, I shall take and accept your silence as meaning that you do not accept the term, and I will therefore consider the matter closed.

"Yours very truly."

This letter was received by J. W. Stuberfield at Rison, Arkansas, in due course of mail. On the 30th day of October, 1922, Richardson wrote Stuberfield another letter in which he notified him that he would not buy the land. Stuberfield did not receive this letter in due course of mail, because he had gone to see Richardson for the purpose of closing the deal with him after he had received the first letter. When Stuberfield arrived at Richardson's house, he told him that he had received his letter and had come down at once to let him know that he accepted the proposition that had been made him for the purchase of his land. Richardson told Stuberfield that he had written him another letter. Richardson's daughter married that night, and nothing more was said between the parties until the next morning. Stuberfield again told Richardson that he had come down to accept his proposition, and Richardson then told him that he had bargained for another place, and could not take his farm. Stuberfield later met Richardson at Camden, and Richardson told him that he would not take his place.

Charles Richardson was a witness for himself. According to his testimony, J. W. Stuberfield had represented to him that the farm which he looked at did not overflow, and, after he had written the first letter, which is copied above, Richardson found out that the land did overflow, and, for that reason, declined to purchase it. Evidence was introduced by him to corroborate his testimony. Richardson told Stuberfield, when he came to see him to accept his proposition for the purchase of the land, that he could not take the place, and that he had previously written him to that effect. Stuberfield replied to him that he had not gotten the letter.

On the part of Stuberfield evidence was introduced tending to show that the land in question did not overflow.

The chancellor found the issues in favor of the plaintiffs, and a decree of specific performance was entered of record in their favor against the defendant. The case is here on appeal.

*Gaughan & Sifford,* for appellant.

*Danaher & Danaher,* for appellee.

HART, J., (after stating the facts). The decree was wrong, for two reasons. In the first place, there was no completed contract of any kind between the parties for the purchase and sale of the land. It is the theory of the plaintiffs that the contract was completed when J. W. Stuberfield orally accepted the proposition contained in the letter written to him by Charles Richardson on the 28th day of October, 1922. It will be noted from the terms of this letter that there was something more to be done between the parties. Richardson stated that, if his terms were acceptable to Stuberfield, he would be up there on November 2, 1922, to close out with him as theretofore agreed to. The letter showed that the contract was not complete and something else remained to be done between parties.

It is true that Stuberfield went to see Richardson and told him that he had come to accept his proposition. Richardson, however, at once told Stuberfield that he had changed his mind, and did not intend to purchase the land. Stuberfield could not, by parol, accept the written offer made to him by Richardson while the latter was, at the same time, telling him that he had withdrawn his offer and would not purchase the land. The letter of Richardson was nothing more than an offer to purchase the land from Stuberfield, and he could withdraw it at any time before it was accepted. Stuberfield could not make an oral acceptance of the proposition while Richardson was, for all practical purposes, at the same moment of time withdrawing his offer.

Moreover, the letter of Richardson was not of itself a sufficient memorandum to satisfy the statute of frauds,

because it in no way described or gave any means of identifying the land sold. *Fordyce Lumber Co.* v. *Wallace,* 85 Ark. 1, and *Skinner* v. *Stone,* 144 Ark. 353. It is well settled by these and other decisions of this court that every contract for the purchase of land must define its identity and fix its locality, or there must be such a description as, by the aid of parol evidence, will readily point to its locality and boundaries. An agreement for the sale of land which is required to be in writing by the statute of frauds must be certain in itself, or capable of being made certain by reference to something else.

In the case at bar there is nothing to point out or locate the land. It does not specify the county or State in which the land is situated. It does not state that it lies on any particular stream, or that it is situated near any well known place. It does not even refer to it as a farm known by a certain designated name. No natural object or permanent monument is referred to in the writing. Therefore, a court of equity will not specifically enforce a contract for the purchase or sale of land with such an uncertain description of the land as the one here sought to be enforced.

Our decisions cited above are in accord with the general trend of authorities on the subject. *Hall* v. *Cotton,* 167 Ky. 464, 180 S. W. 778; L. R. A. 1916C, 1124; *Allen* v. *Kitchen,* 16 Idaho 133, L. R. A. 1917A, p. 563; and other cases cited in 25 R. C. L., p. 650.

In *Allen* v. *Kitchen, supra,* the court said: "The distinction, however, should always be clearly drawn between the admission of oral and extrinsic evidence for the purpose of identifying the land described and applying the description to the property, and that of supplying and adding to a description insufficient and void on its face."

It follows from the views we have expressed that the decree must be reversed, and the case will be remanded with directions to dismiss the complaint of the plaintiffs for want of equity.