ROUTEN *v.* WALTHOUR-FLAKE COMPANY, INC.

4-9922                                          253 S. W. 2d 208

Opinion delivered December 15, 1952.

*Milton McLees,* for appellant.

*Lee Miles* and *H. B. Stubblefield,* for appellee.

WARD, Justice.  Suit was filed by appellant to enforce specific performance of a sales contract wherein he agreed to purchase and appellees agreed to sell certain lands. All of appellant's dealings were with Walthour-Flake, appellee, as agent for the owners of the land who are also appellees. The trial court sustained a demurrer to appellant's complaint on the ground that the description contained in the sales contract was not definite. This appeal is therefore presented on the complaint and the exhibited sales contract, the demurrer, and also on certain correspondence between the owners of the land and Walthour-Flake which was filed in the case on motion of appellant and by order of the court.

The complaint alleges, among other things: that the appellees, except Walthour-Flake, are the owners of the "North Eighteen (18) acres of South one-half (S½) Northeast Quarter (NE¼) Southeast Quarter (SE¼) Section Twenty (20), Township Two (2) North, Range Eleven West"; that Walthour-Flake was acting as agent for the owners; that appellant made an offer to said agent to buy 16 acres of the above-described property lying east of Highway No. 67 East at Fairfax Crossing for the sum of $5,500; that he paid to the agent the sum of $250 as earnest money, and that said offer was accepted, all as set out in a certain written contract which was attached as an exhibit; and that appellees fail and refuse to carry out the contract. The balance of the purchase price was tendered into court. The prayer was that appellee be required to carry out the obligations of the sales contract by executing a deed or, in lieu thereof, to respond in damages.

We deem it unnecessary to set out the sales contract in full. The pertinent part of the contract is the description which reads: "16 acres—67 Highway East at Fairfax Crossing." It is dated December 16, 1950,

and signed by appellant. The acceptance of appellant's offer is shown signed by Walthour-Flake on January 25, 1951.

The correspondence referred to above which is a part of the record is not material to a decision herein except insofar as it fails to furnish any description of the land more definite than that shown in the contract. It does reveal, however, that on June 25, 1951, the owners accepted an offer from A. N. McAninch of $6,500 for land described as "the North 16 acres of S½ NE¼ SE¼, Sec. 2, Twp. 2 N. Rng. 11 W., East Hy. 67 E."

Appellant makes no serious contention that the description contained in the sales contract, standing alone, is sufficiently definite to sustain an action for specific performance, but he does earnestly contend that he should have been permitted to introduce oral testimony for the purpose of locating and identifying the land, and that the trial court erred in refusing to let him do so.

We are of the opinion that appellant's contention in this matter cannot be sustained. The principal reason for this conclusion is that, since the description of the land in the sales contract is admittedly not definite, there are no words or phrases in the contract itself or in any of the correspondence which furnish a *key* whereby the land could be definitely located and described. This is the test that has been consistently announced in many decisions of this court, a few of which are noted below.

In the case of *Fordyce Lumber Company* v. *Wallace*, 85 Ark. 1, 107 S. W. 160, Justice McCULLOUGH, speaking for the court, said:

"Before a court of equity is justified in requiring specific performance of a contract to convey land, the property which is the subject must be accurately described; the contract must disclose a description which in itself is definite and certain, or one which is capable of being made certain by other proof, the contract itself furnishing the *key* by which the property may be identified." [Emphasis supplied.]

Although this case has been cited many times it has never been overruled. It was distinguished in the case of *Hirschman* v. *Forehand,* 114 Ark. 436, 170 S. W. 98, where the court, in spite of an indefinite description, permitted the introduction of proof to make it more specific, but on the theory that the case was taken out of the statute of frauds because the purchaser had entered into possession and made valuable improvements. Those features, of course, are not present in the case under consideration.

Testimony was permitted to identify lands indefinitely described in a sales agreement in the case of *Dollar* v. *Knight,* 145 Ark. 522, 224 S. W. 983, but it was allowed under the rule in the *Fordyce Lumber Company* case, *supra.*

In the case of *Rawls* v. *Free,* 184 Ark. 737, 43 S. W. 2d 540, the court again permitted testimony for the purpose of identifying the land. The contract between the buyer and seller consisted of letters in which the property was described as ''the property of the Ross Estate, upon which Free held a mortgage which he was then foreclosing.'' In applying the rule heretofore announced, the court used this language:

''An accurate description of the lands might have been obtained from the mortgage or from the decree ordering its foreclosure, and the contract furnished the *key* by which the property might be certainly identified.'' [Emphasis supplied.]

Appellant cites several cases where the courts have permitted testimony to amplify an indefinite description in a sales contract but none of them abrogates the rule above announced.

The case of *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671, cited by appellant, deserves special consideration. It was there said by the court, in discussing a contract for sale which consisted of numerous letters between the parties, that: ''The letters indicate that from the beginning both parties definitely understood the tract of land which was the subject of their negotiations.'' If

this language states a correct rule of law and if this is the sole test to be applied in such cases, then appellant's contention for a reversal of this case would appear to have merit, because it is reasonable to assume that appellant and Walthour-Flake both understood exactly what land was involved. This is indicated by the fact, shown by the correspondence, that during the time of the negotiations, covering several months, no question was raised regarding the location or identity of the land, notwithstanding the owners and Walthour-Flake were all the time promising to deliver a deed and abstract. We can hardly imagine appellant being willing to pay out $5,500 without knowing just what he was going to get for his money nor can we imagine the owners offering to deliver title to valuable land unless they knew exactly what land they expected to convey.

The above-indicated rule, however, is not one that has been approved by our court, nor would it be a reasonable one since it would amount to a complete nullification of the statute of frauds in such instances. Although the quoted language was used in the cited case it was not relied on to reach the conclusion. The rule relied on was the one first announced as is clearly shown by certain language used in the opinion, some of which we quote:

". . . if we take every part of the description in the letters, including the acreage and location, and give every part its due weight, we have a fixed and definite tract of land. . . ."

"The letters which constitute the contract identify and furnish the *means* of finding the land." [Emphasis supplied.]

The word *means,* just used, is analogous to the word *key* used in other citations.

In the case under consideration there is no *key* either in the contract or the correspondence [none of which was seen by appellant until it was filed in court] which could lead to a definite description of the land; consequently, it does not come within the rule permitting the introduction of testimony.

In our search of the authorities the closest approach we find to the contention of appellant here is the case of *Grindell* v. *Bass,* 2 Chancery Division, page 487, an English decision in 1920. There the court held that a pleading filed by the defendant, owner of the property, supplied the defect in the memorandum contract to sell and so took it out of the statute of frauds. Here it could be argued that the sales contract executed by Mattie Redding and Felix Richardson, owners of the land, agreeing to sell to A. N. McAninch, contained a definite description and therefore would take this case out of the statute of frauds. The sales contract we speak of is the one dated several months after the execution of the contract sued on and was never delivered to appellant, but was produced in court by appellees on motion of appellant. The fact that it was not a part of the contract with appellant and was not delivered to him is vital and therefore affords appellant no relief here. We have heretofore so held in the case of *Harris* v. *Dacus,* 209 Ark. 1031, 193 S. W. 2d 1006. Harris brought suit against Dacus [the owner of certain land] for specific performance on an insufficient memorandum contract and he offered in evidence a letter from Burns [the agent through whom Harris was buying] to Dacus which might have supplied the necessary elements. In rejecting this letter as evidence to supply the missing link, the court, referring to a former decision, said:

"We adhere to the rule there announced, and hold that, even if the letter of Burns to Dacus, relied on by appellant as constituting the memorandum of the contract of sale, could be said to be sufficient in its language and terms to satisfy the requirements of the statute of frauds, yet, since this letter was never delivered to appellant, it could not form the basis of a suit by appellant for specific performance."

From what has been said, it follows that the trial court was correct in sustaining appellee's demurrer and its action is therefore affirmed.