CREIGHTON v. HUGGINS.

5-1304                                    303 S. W. 2d 893

Opinion delivered July 1, 1957.

*Sloan & Sloan,* by *Frank Sloan,* for appellant.

*Frierson, Walker & Snellgrove,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a suit by appellee, James C. Huggins, for specific performance of a contract under which the appellants, J. L. Creighton and wife, were to sell him a house and lot in Jonesboro, Arkansas, for $6,000. Appellee, Donald E. Gilbert, who executed the sales contract on behalf of the appellants, joined in the suit, claiming a 5% commission of the agreed purchase price was due him as a licensed real estate broker employed by the appellants. In their answer appellants alleged that appellees sought by parol evidence and circumstances to modify and alter

the written contract by adding to the property to be sold a strip of land 11.4 feet wide and 65 feet long; and that such attempted change was a void effort to modify the contract by parol evidence and within the statute of frauds which was pleaded as a complete bar to the suit.

This appeal is from a decree ordering specific performance of the contract, payment of a commission of $300.00 to appellee, Gilbert, and denying appellants' counterclaim for unpaid rents and damages. The principal issue is whether Appellee Huggins, under the statute of frauds, was entitled to specific performance of the contract where the description covered only a part of a larger tract owned by appellants and a determination of what part of the larger tract was intended to be included could not be made without resorting to parol evidence.

Appellant J. L. Creighton inherited a tract of land in 1934 described as Lot 3 of Cobb's Survey of the Southwest Quarter of the Southeast Quarter of Section 18, Township 14 North, Range 4 East, in the City of Jonesboro, Arkansas. The tract measures 65 feet east and west and 215.2 feet north and south. It is bounded on the north by Monroe Avenue, on the south by Washington Avenue and on the west by Carson Street. In 1934 the Creighton family residence was located on the south portion of the lot and known as "500 East Washington Avenue." This residence was subsequently converted into a four-unit brick apartment building. On the north part of the lot there was an old frame dwelling designated as "400 Carson Street," which was rented to tenants. There was a double garage between the two buildings, which was at first used exclusively by the Creighton family as occupants of 500 East Washington. About 1944 the old house at 400 Carson Street was torn down and materials from it used to convert the double garage to a small apartment which was numbered 400 1/2 Carson Street. In 1947 a new five-room frame dwelling was erected in place of the old house at 400 Carson Street.

Appellants have resided in California for several years. In early 1951 or 1952 Appellee Gilbert succeeded another agency as appellants' local agent for rental of their property. The garage apartment was rented to various tenants prior to 1952 when the city directed that such rental cease because of insufficient plumbing facilities. After 1952 the garage building was used for storage purposes by the tenants at both 400 Carson Street and 500 Washington Avenue. When appellants constructed the new house at 400 Carson Street in 1947 they caused a survey of Lot 3 to be made dividing it into approximately two equal parts; the east-west division line running through the middle of the garage apartment with one room located north and the other room south of said line. In accordance with said survey Lot 3 has been divided on the county tax books since 1948 as: "Lot 3 (less S. 107.1')" and "South 107.1' of Lot 3." In 1947 and 1952 appellants executed mortgages on the respective parcels, using the descriptions designated by the 1947 survey. A plat of said survey with a sketch of the dwelling at 400 Carson superimposed upon it as shown by another plat in evidence follows:

In the spring of 1955 Appellee Gilbert, as appellants' agent, rented the property at 400 Carson Street to Huggins for $55.00 per month. Gilbert wrote a letter to appellants on June 3, 1955, proposing "the sale of

400 Carson'' to Huggins for $6,000. In their reply dated June 13, 1955, appellants authorized sale of ''the house at 400 Carson'' on the terms suggested. On July 15, 1955, Gilbert, as appellants' agent, entered into a written contract with Huggins to sell the property described as: ''400 Carson St.—Jonesboro, Craighead, Ark.''

Appellee testified that when Gilbert rented the property to Huggins the latter was placed in possession of the garage apartment as a storage room and that tenants in the four-unit apartment were only allowed to so use it by permission from Huggins. This was stoutly disputed by the several tenants of the other apartments who admittedly kept items of personal property stored there and keys to a padlock placed thereon by one of said tenants. This tenant, who was a cousin of Huggins, denied the latter gave him permission to use the building and stated such permission was given by Mrs. Creighton's aunt who then lived in and had charge of the rental of the four-unit apartment. Gilbert was also permitted to testify over appellants' objection to a telephone conversation with appellant, J. L. Creighton, which allegedly took place twelve days after the sale contract was signed, as follows:

''The first part of the conversation concerned what the delay was in closing the sale with James Huggins. Then I told him the delay was because of the G. I. loan and he said, 'I know it takes a lot of time to close those things. How much longer will it take?' Then I said, 'If this survey goes all right it should not take but 15 or 20 days more.' And then I said, 'We have a hitch in the contract of sale with James Huggins. James Huggins has bought the garage apartment lot and now we find a line was established in this description to split the middle of the garage apartment.' And I told him I talked with James Huggins and he was not interested in this house without the garage apartment going with it and I had talked with the appraisers and they told me they could not approve the loan unless the garage was included and I then told him this $1,000 price on the garage apartment was more than twice its value and I thought it should go with the Carson Street property.

It could not be separated and after I explained to him what the situation was he said, 'Certainly. Let the garage apartment go with it.' "

In admitting the testimony which Creighton denied, the chancellor stated it would not be considered as altering the terms of the contract.

When appellants refused to execute a warranty deed conveying the entire garage apartment or storage room as a part of 400 Carson Street, appellees instituted this suit. In their original complaint filed November 3, 1955, appellees alleged an agreement to sell Huggins: "All of Lot 3 of Cobb's Survey . . . less and except the South 107.1 feet thereof in the City of Jonesboro, Arkansas, commonly known as 400 Carson Street . . ." In an amendment to the complaint filed January 6, 1956, the following description was substituted in lieu of that set out in the original complaint: "The North 120 feet of Lot 3 in Cobb's Survey . . in the City of Jonesboro, Craighead County, Arkansas." It is noted that the first description divides the garage apartment in the middle according to the 1947 survey and subsequent record transactions while the second description includes about 11.5 additional feet and takes in the entire garage building.

Before a court of equity will require specific performance of a contract to convey lands the property must be accurately described; and the contract must disclose a description which in itself is definite and certain, or one which is capable of being made certain by other proof the contract itself furnishing the key by which the property may be identified. *Fordyce Lumber Company* v. *Wallace*, 85 Ark. 1, 107 S. W. 160; *Routen* v. *Walthour-Flake Company, Inc.*, 221 Ark. 354, 253 S. W. 2d 208. Thus in order to satisfy the Statute of Frauds (Ark. Stats., Sec. 38-101) there must be a memorandum signed by the vendor which furnishes a key from which the location of the property may be ascertained by competent extrinsic evidence. Another applicable rule is stated in 37 C. J. S., Frauds, Statute of, Sec. 282 (b), as follows: "While parol evidence is not admissible to *supply*

a description of the subject matter of a contract within the statute of frauds, if the memorandum contains matters capable of making identification certain, parol evidence may be admitted to *apply* the description therein." (Italics supplied). We approved this rule in *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671.

A designation of the premises in a contract or memorandum by street number ordinarily proves sufficient to satisfy the statute even though parol evidence must be resorted to in following the key furnished. This is particularly true where the vendor owns only one lot or parcel which may be readily located and identified from the address furnished. We recognized the rule in *Ray* v. *Robben,* 225 Ark. 824, 285 S. W. 2d 907, where the vendor of a tourist court consisting of several cabins which were used and considered as a single parcel at the street address given in the memorandum. But a different rule has been followed where, as here, the given street address covers only a part of a larger tract owned by the vendor and there is nothing of record or on the ground to support the theory of identification sought to be established by parol evidence.

As the author states in 49 Am. Jur., Statute of Frauds, Sec. 348: "The circumstance that the seller owns only one tract of land which answers the description given in the memorandum operates to render sufficient a description which under other circumstances might be too general to satisfy the statute. But notwithstanding the description is apparently of the vendor's premises at a certain place, if it appears that the sale was of a part only of such premises the description will be deemed insufficient to satisfy the statute unless it expressly defines the boundaries of the portion sold." This circumstance was recognized in *Hereford* v. *Tilson,* 145 Tex. 600, 200 S. W. 2d 985, in which the court denied specific performance because of the statute of frauds where the street address covered only a part of a larger tract owned by the vendor and there was nothing of record or on the ground to indicate what the buyer was to get, and the question of what part of the large tract was intended to

be included could not be answered without resorting to parol evidence. See also, *Maryland State Housing Company* v. *Fish,* 208 Md. 331, 118 A. 2d 491, where a "double house" was involved somewhat similar to that in question here. We consider. these decisions sound and the principles announced as controlling here. There were no visible lines or signs on the ground in the instant case to identify the 11.4-foot disputed strip as a part of 400 Carson Street and a resort to all available record evidence tends to contradict rather than support such identification. In these circumstances the learned chancellor correctly held that the subsequent telephone conversation should not be considered as altering the terms of the written contract but erred in decreeing specific performance.

The decree is accordingly reversed and the cause remanded with directions to dismiss the complaint of appellees and enter judgment for appellants against James C. Huggins for delinquent rents to the date of the decree at the rate of $55.00 per month. Since we are of the opinion that Huggins held over under a *bona fide* though mistaken belief that he had a right to do so, appellants' prayer for double damages under Ark. Stats., Sec. 34-1516, will be denied. See *Lesser-Goldman Cotton Co.* v. *Fletcher,* 153 Ark. 17, 239 S. W. 742.