DEVELOPMENT & CONSTRUCTION MANAGEMENT, INC.
*v.* CITY OF NORTH LITTLE ROCK

CA 03–349                                    119 S.W.3d 77

Court of Appeals of Arkansas
Division III
Opinion delivered October 1, 2003

*McHenry & McHenry Law Firm*, by: *Donna McHenry, Robert McHenry*, and *Greg Taylor*, for appellant.

*Andrea G. Woods*, Asst. City Att'y, and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *John K. Baker*, for appellee.

JOSEPHINE LINKER HART, Judge. This is an appeal from a summary judgment in a declaratory-judgment action to determine the validity of an agreement to sell real estate and a counterclaim for specific performance of that agreement. The trial court declared the purported agreement void, quieted title to the property, and dismissed the counterclaim for specific performance. We affirm.

On February 13, 2002, appellee City of North Little Rock, hereinafter referred to as "city" and appellant Development & Construction Management, Inc. (DCM), executed a "Real Estate Purchase and Sale Agreement" (the document). The document purported to be a contract for the city to sell to DCM two parcels of land: "one consisting of approximately seven acres, more or less, ("Parcel A"), more particularly described on Exhibit A-1 attached hereto, and the second consisting of approximately four acres,

more or less, ("Parcel B"), more particularly described on Exhibit A-2 attached hereto." Neither Exhibit A-1 nor A-2 contained a description; instead, the following clause appeared on both exhibits: "(TO BE AGREED UPON BY THE PARTIES UPON EXECUTION BY SELLER)." Although paragraph 6(b) of the document required the city to provide a survey on or before thirty days after the execution of the document, this was not done by the city.

The purchase price of the property was to be determined pursuant to paragraph 4 of the document. The total purchase price was to be the amount determined by multiplying the Parcel A unit price ($4.00) and the Parcel B unit price ($2.06) by the actual number of square feet of useable land located within each parcel as determined by the parties and adding the sums together. The "useable land" within a parcel was defined as "the land that, in light of its location within the Parcel and the easements and other encumbrances to which it is subject, is reasonably useable for development or construction of improvements, including parking lots and driveways." The document further required the parties "to negotiate in good faith [and] agree upon the number of useable square feet located within the Parcels based upon the Survey and available title information." Any such agreement was to have been completed on or before ten days prior to the end of the inspection period set out in the document and was to have been evidenced by a memorandum or other writing signed by both parties. No memorandum or other writing has ever been executed by the parties pursuant to these provisions of the document.

Appellee filed this declaratory-judgment action on June 22, 2001, seeking a declaration that the document was unenforceable because it did not contain a property description and because appellant failed to timely make an escrow deposit. Appellee also sought to quiet title to the property.

Appellant answered, denying that the document was unenforceable or that it had breached the terms of the document. Further, it asserted that the city had failed to provide a survey of the property as required by the document. Appellant also pled the affirmative defenses of laches, unclean hands, and total breach by appellee. In its counterclaim, appellant sought specific performance of the document or, in the alternative, damages for breach of contract. In its answer to the counterclaim, the city argued that

no contract existed and asserted the affirmative defenses of the statute of frauds, estoppel, failure of consideration, and waiver.

On August 16, 2002, the city filed its motion for summary judgment, alleging among other things, that the document did not satisfy the statute of frauds because it lacked essential terms required of a contract for the sale of land. Specifically, the city argued that the document did not contain a meaningful description of the lands to be sold and a sale price for the land. In support of its motion, the city presented the deposition of David Carl, president of appellant, who admitted that he and the mayor had not agreed to a description of the property in writing. Carl also admitted that the document did not state the total square footage to be acquired and that he did not know the total square footage. The city also presented the affidavit of Mayor Patrick Hays in which the mayor stated that the parties never reached an agreement on the description of the property. In opposition to the city's motion, appellant presented the affidavit of Carl in which he stated that the land was well known to himself and Hays. Carl also stated that the city did not provide a survey, that DCM, with approval of the city, obtained a survey, and that the city never objected to the survey. Appellant also presented the deposition of Hays in which he generally described the location of the property and denied that there was a contract.

In a letter opinion dated December 19, 2002, the trial court granted the city's motion, concluding that the agreement was not a contract for the sale of real property and thus not enforceable because it did not contain essential elements, *i.e.*, the description of the land to be sold and the total sale price term. The trial court noted that appellant failed to meet proof with proof. The trial court granted the city's request to quiet title and dismissed appellant's counterclaim for specific performance. A decree was entered accordingly, and this appeal followed.

On appeal, this court need only decide if the grant of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). The burden of sustaining a motion for summary judgment is on the movant. *Id.* All proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts or inferences are resolved against the moving party. *Id.* Once the moving party has

established a prima facie entitlement to summary judgment by affidavits or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* Summary judgment is appropriate under Ark. R. Civ. P. 56(c) when there is no genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. *Id.* Summary judgment is not appropriate where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Lee v. Hot Springs Village Golf Sch.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997).

Appellant argues on appeal that the trial court erred in granting summary judgment on the basis that a valid contract did not exist. Appellant divides its argument into three subparts: that the document satisfied the statute of frauds, that the price was determined in the document, and that the document reflected a "meeting of the minds."

■ Appellant first asserts that the document satisfies the statute of frauds. On the other hand, the city argues that the document does not satisfy the statute of frauds because Exhibits A-1 and A-2 were not agreed upon prior to the execution of the document based, on the theory that something cannot presently reference something not yet in existence. *See Brown v. Mitchell*, 225 Ga. 115, 166 S.E.2d 571 (1969). However, this argument is refuted by the document itself. Paragraph 17 provides in part:

> Legal Description. The parties mutually acknowledge and agree that the description of the Property as set forth in Section 1 and Exhibits A-1 and A-2 is subject to modification upon completion of the Survey, and, as a result, the description to be used in the deed may change after the Execution Date of this Agreement....

Thus, the parties expressly contemplated that there would be more negotiations in order to complete the description and the purchase price of the agreement.

■ Oral evidence may be resorted to only for the purpose of identifying the description contained in the writings but not for the purpose of locating the land and supplying the description which the parties have omitted from the writings. *Creighton v. Huggins*, 227 Ark. 1096, 303 S.W.2d 893 (1957); *Moore v. Exelby*, 170 Ark. 908, 281 S.W. 671 (1926); *Richardson v.*

*Stuberfield*, 168 Ark. 713, 271 S.W. 345 (1925). Other cases refer to this rule as requiring the writing itself to furnish "keys" to locating the property. *See Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996); *Sorrells v. Bailey Cattle Co.*, 268 Ark. 800, 595 S.W.2d 950 (Ark. App. 1980); *Boensch v. Cornett*, 267 Ark. 671, 590 S.W.2d 55 (Ark. App. 1979). Appellant argues that the document does furnish "keys" to its location because paragraph 9(h) provides that Parcel A abuts Karrot Street, Broadway Avenue, and Riverfront Drive and Parcel B abuts Riverfront Drive, while paragraph 9(m) provides that the property is zoned "C-6" by the city. Appellant asserts that, because the documents necessary to fashion a proper description of the property were solely within the control of the city, the city should be estopped to deny the validity of the agreement. It is true that we have held that the issue of estoppel is generally one of fact. *See, e.g., Dickson v. Delhi Seed Co.*, 26 Ark. App. 83, 760 S.W.2d 382 (1988); *Blevins v. Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). Estoppel is an affirmative defense required to be specifically pled under Ark. R. Civ. P. 8(c). However, we are unable to consider appellant's estoppel argument because we do not address arguments made for the first time on appeal or theories upon which the trial court has not ruled. *See Presley v. Presley*, 66 Ark. App. 316, 989 S.W.2d 938 (1999).

Here, estoppel was not pled in appellant's answer and counterclaim, although the affirmative defenses of laches and unclean hands were pled. Further, estoppel was not specifically mentioned by appellant in argument on the motion. Other than in the context of the estoppel argument, appellant does not specifically argue that the document, together with the survey, provides a description of the property to be conveyed. Carl never states in his affidavit that the parties reached an agreement as to the description of the property, only that the identity of the property to be conveyed was never in doubt. Further, the survey was not introduced into evidence.

In *Creighton v. Huggins, supra*, the supreme court reversed a grant of specific performance where the contract for sale of realty contained a description (a street number) that covered only part of a larger tract owned by the vendor and there were no visible lines or signs on the ground to identify division, and a determination of what part of the larger tract was intended to be included could not be made without resorting to parol evidence.

In *Routen v. Walthour-Flake Co.*, 221 Ark. 354, 253 S.W.2d 208 (1952), the land to be sold was described in the contract as "16 acres B 67 Highway East at Fairfax Crossing." The appellant brought suit for specific performance of the contract, and the trial court dismissed the complaint. On appeal, the appellant contended that oral testimony should be permitted for the purpose of locating and identifying the land. The supreme court disagreed and affirmed. The supreme court also disapproved of certain language in *Moore v. Exelby*, *supra*, which appeared to allow extrinsic evidence that the parties definitely understood the property to be conveyed to satisfy the requirement that the land be described.

■■ In the present case, we hold that the document does not adequately furnish a description as to the property. The only description in the agreement that attempts to satisfy the statute of frauds is that Parcel A is bound by Karrot Street, Riverfront Drive, and Broadway Avenue and that the tract is zoned "C-6." There is no indication of *where* Parcel B is located relative to Parcel A, except that it is bounded by Riverfront Drive. Therefore, *Creighton v. Huggins*, *supra*, controls the outcome of this appeal because, where only a smaller part of a larger tract is described, the description is insufficient to comply with the statute of frauds as to a description of the entire tract.

■■ As its second subpoint, appellant argues that the price term is contained within the document. The supreme court stated in *Van Dyke*, *supra*, that a writing may fail the statute of frauds where it does not adequately set out the time and method of payment. In the present case, the document provides that the purchase price shall be determined by adding the Parcel A price of $4.00 per square foot to the Parcel B price of $2.06 per square foot and subtracting six per cent of that sum from the total. The price of each parcel is determined by the number of useable square feet within each parcel based on the survey and other title information. The document then requires the parties to negotiate the number of useable square feet within each parcel. While the document itself contains an adequate formula for determining the purchase price, the price itself is dependent on a survey and a negotiated agreement that described the usable land to be conveyed. Appellant admitted as much in the hearing on the motion for summary judgment. Thus, the parties agreed that they would negotiate a final purchase price after the completion of the survey. Therefore, the document was in the nature of an agreement to engage in future negotiations. Such agreements are generally void because

they fail to contain all of the essential terms. *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 70 Ark. App. 169, 16 S.W.3d 265, *on review*, 343 Ark. 224, 33 S.W.3d 128 (2000); *see also Rhode Island Five v. Medical Assocs. of Bristol County, Inc.*, 668 A.2d 1250 (R.I. 1996) (holding that writings that contained issues not fully addressed and left for further negotiations did not indicate a "meeting of the minds" and thus creation of a contract).

For its third subpoint, appellant argues that there was a meeting of the minds on all essential terms. Appellant relies on *Thurman v. Thurman*, 50 Ark. App. 93, 900 S.W.2d 221 (1995). However, *Thurman* is distinguishable because the written agreement in that case contained all of the essential terms while the document in the present case lacks the essential terms describing the land to be sold and the price to be paid. Appellant also argues that there was never any dispute as to the exact property involved in this transaction. We disagree and reiterate:

> [B]efore an agreement becomes binding there must be a meeting of the minds of both parties as to all terms. A meeting of the minds is defined as an agreement reached by the parties to the contract and expressed therein, or as the equivalent of mutual assent and mutual obligation.

*Moss v. Allstate Ins. Co.*, 29 Ark. App. 33, 36, 776 S.W.2d 831, 833 (1989) (citations omitted). Here, there was no meeting of the minds.

Affirmed.

CRABTREE and ROAF, JJ., agree.